FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 12, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SLIDEWATERS LLC,

Plaintiff,

v.

WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES and GOVERNOR JAY INSLEE, in his official capacity,

Defendant.

NO. 2:20-CV-0210-TOR

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

BEFORE THE COURT is Plaintiff's Motion for Temporary Restraining Order (ECF No. 3). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Temporary Restraining Order (ECF No. 3) is DENIED.

//

//

## BACKGROUND

This case concerns Plaintiff's ability to operate its business while subject to state emergency restrictions put into place due to the COVID-19 pandemic. Plaintiff seeks a temporary restraining order ("TRO") enjoining Defendants from enforcing Proclamations 20-05 and 20-25.4 and WAC 296-800-14035. The following facts are drawn from Plaintiff's Complaint and are essentially undisputed for the purposes of resolving the instant motion.

Plaintiff Slidewaters LLC is a family-owned waterpark in Lake Chelan, owned by cousins Burke and Robert Bordner. ECF No. 1-4 at 2, ¶ 4.1. Plaintiff employs approximately 150 seasonal employees and four year-round employees. ECF No. 1-4 at 2, ¶¶ 4.5, 4.7. Plaintiff operates seasonally for an approximately 100-day window that starts the Saturday prior to Memorial Day weekend and ends at Labor Day. ECF No. 1-4 at 3, ¶¶ 4.8-4.9. Plaintiff makes nearly all of its income that sustains its business throughout the year during this 100-day period. ECF No. 1-4 at 3, ¶ 4.10. Plaintiff depends on being open during this 100-day period to ensure that it can survive during the "off-season." ECF No. 1-4 at 3, ¶ 4.13. Plaintiff previously made a business decision to expand the park, with the goal of having the 2020 season recoup the money expended during the three-year expansion project. ECF No. 1-4 at 3, ¶ 4.14. Plaintiff has taken on substantial

business debt for the expansion project in reliance upon being able to operate during the 2020 season. *Id.*

On February 29, 2020, in response to the COVID-19 pandemic, Defendant Governor Jay Inslee proclaimed a State of Emergency for all counties in Washington, referred to as the "Stay Home, Stay Healthy" order, or "Proclamation 20.05." ECF No. 1-4 at 3, ¶ 4.16. Governor Inslee issued Proclamation 20.05 pursuant to RCW chapters 38.08, 38.52, and 43.06. ECF No. 1-4 at 3, ¶ 4.17. Governor Inslee proclaimed that COVID-19 is a "public disaster." ECF No. 1-4 at 4, ¶ 4.19. Governor Inslee also proclaimed that the Washington State Comprehensive Emergency Management Plan be directed, and that state agencies and departments were directed to utilize state resources and do everything reasonably possible to assist affected counties to respond to and recover from COVID-19. ECF No. 1-4 at 4, ¶¶ 4.22-4.23.

On May 4, 2020, Governor Inslee sent a letter to the Washington State legislature requesting an extension of statutory waivers and suspensions ordered by Proclamation 20.05. ECF No. 1-4 at 4, ¶ 4.24. On May 9, 2020, the four legislative caucus leaders sent a letter in response to Governor Inslee, in which they granted an extension of the requested proclamations until May 31, 2020, pursuant to RCW 43.06.220(4). ECF No. 1-4 at 4, ¶ 4.25.

On May 26, 2020, Defendant Department of Labor and Industries ("LNI") filed an emergency rule, WAC 296-800-14035, with the Washington Office of Code Reviser. ECF No. 1-4 at 4, ¶ 4.26. The emergency rule states, "Employers must not allow employees to perform work where a business activity is prohibited by an emergency proclamation." ECF No. 1-4 at 26. The emergency rule cites, in part, Proclamation 20.05 as the basis for its rulemaking authority. ECF No. 1-4 at 5, ¶ 4.28. LNI posted a notice on its website which stated, "If employers are found to be defying the Governor's order, they'll be informed and directed to close or adjust operations immediately. If they do not, they'll face a workplace safety citation that could carry a fine of nearly $10,000 or more." ECF No. 1-4 at 5, ¶ 4.29.

On May 31, 2020, Governor Inslee announced Proclamation 20-25.4, "Transition from 'Stay Home – Stay Healthy' to 'Safe Start – Stay Healthy' County-By-County Phased Reopening." ECF No. 1-4 at 31-35. Proclamation 20-25.4 utilizes a four-phase plan for opening the State of Washington. ECF No. 1-4 at 6, ¶ 4.36. Each county must, in accordance with the plan, independently demonstrate that they meet a number of specific criteria to move into a new phase. ECF No. 1-4 at 6, ¶ 4.41.

Chelan County is, as of the filing of the Complaint, in phase one of the four-phase plan. ECF No. 1-4 at 6, ¶ 4.40. At the earliest, Plaintiff would be eligible to

begin moderate operations in phase three of Proclamation 20-25.4. ECF No. 1-4 at 6, ¶ 4.39. Plaintiff has not yet been able to open for its 2020 season and expects it will unlikely be able to open for the entire 2020 season. ECF No. 1-4 at 6, ¶¶ 4.42-4.43. Plaintiff now faces increased competition from out-of-state water parks such as Silverwood's water park in Idaho, which opened on May 30, 2020. ECF No. 1-4 at 7, ¶ 4.48. Plaintiff has created a "Clean & Safe" plan for its water park to assist patrons, guests, and staff in being able to maintain cleanliness, health, and necessary social distancing measures. ECF No. 1-4 at 7, ¶¶ 4.49-4.50. But for the Proclamations and the emergency rule, Plaintiff would be open for its normal season. ECF No. 1-4 at 8, ¶ 4.53.

## DISCUSSION

### A. TRO Standard

Pursuant to Federal Rule of Civil Procedure 65, a district court may grant a TRO in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). The analysis for granting a temporary restraining order is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). It "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest. *Winter*, 555 U.S. at 20; *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."); *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (internal quotation marks and citation omitted)).

//

//

**B. Likelihood of Success on the Merits**

Plaintiff's Complaint raises claims that may be categorized by three main arguments: (1) Governor Inslee does not have the authority to issue the emergency proclamations; (2) LNI does not have authority to issue an emergency rule based on the Governor's unlawful emergency proclamations; and (3) Defendants' actions have violated Plaintiff's substantive due process rights under the U.S. Constitution and the Washington Constitution. ECF No. 1-4 at 8-13, ¶¶ 5.1-5.42. Plaintiff contends, while developing minimal supporting legal argument, that it is likely to succeed on the merits of its claims. ECF No. 3 at 8-9. To obtain injunctive relief, Plaintiff must show that there are "serious questions going to the merits" of its claim, and that it is likely to succeed on those questions of merit. *Cottrell*, 632 F.3d at 1131; *Farris*, 677 F.3d at 865.

*1. Governor's Authority*

First, Plaintiff contends it is likely to succeed on the merits of its argument that the Governor's Proclamations exceed the statutory authority authorizing the governor to declare a state of emergency. ECF No. 3 at 8-9. Plaintiff's argument raises questions of statutory interpretation. A federal court charged with interpreting a state statute should do so according to that state's principles of statutory interpretation. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010).

Plaintiff argues that the Proclamations exceed Governor Inslee's statutory authority because the COVID-19 pandemic does not constitute one of the statutorily authorized purposes for which a governor may declare a state of emergency. ECF No. 3 at 8. Washington law allows a governor to proclaim a state of emergency "after finding that a public disorder, disaster, energy emergency, or riot exists within this state or any part thereof which affects life, health, property, or the public peace." RCW 43.06.010(12). "Public disorder, disaster, energy emergency, or riot" are all terms that are not otherwise defined in the statute.

"Whenever [the court] faced with a question of statutory interpretation [it looks] to the plain meaning of the words used in the statute." *State v. Fjermestad*, 114 Wash. 2d 828, 835 (1990). "A nontechnical statutory term may be given its dictionary meaning; statutes should be construed to effect their purpose, and unlikely, absurd, or strained consequences should be avoided." *State v. Smith*, 189 Wash. 2d 655, 662 (2017). The dictionary meaning of "disorder" within the state of emergency statute is relevant here. The Oxford English Dictionary defines "disorder" as a "disturbance of the bodily (or mental) functions; an ailment, disease." Oxford University Press, *disorder, n.*, OED Online (June 2020), https://oed.com/view/Entry/54859?result=1&rskey=LLoCgB&. Merriam-Webster similarly defines "disorder" as "an abnormal physical or mental condition."

Merriam-Webster, *Disorder*, Merriam-Webster.com (May 16, 2020), https://www.merriam-webster.com/dictionary/disorder. The plain meaning of the governor's statutory authority to proclaim a state of emergency in the event of a "public disorder" clearly encompasses an outbreak of pandemic disease. RCW 43.06.010(12). Plaintiff fails to raise a serious question going to the merits of this claim.

Plaintiff's related argument, that only local health officers may issue health directives in light of a pandemic, is similarly unpersuasive. ECF No. 3 at 9. Plaintiff's own cited authority states that the state secretary of health may exercise the authority of local health officers "when in an emergency the safety of public health demands it." RCW 43.70.130(7). Because the governor may lawfully proclaim a public emergency related to disease outbreak, authority to enforce public health rules related to a pandemic is not vested "exclusively" in local health officers. Plaintiff fails to raise a serious question going to the merits of this claim.

*2. LNI Rulemaking Authority*

Second, Plaintiff contends LNI exceeded its rulemaking authority when it promulgated a rule in reliance on the Governor's Proclamations. ECF No. 3 at 8-9. Plaintiff's argument not based in the text of the emergency rule, which states that LNI promulgated the rule pursuant to its statutory authority under RCW 49.17.040 and 49.17.050, among other provisions. ECF No. 1-4 at 26. Contrary to Plaintiff's

characterization, LNI did not promulgate a rule "pursuant to a proclamation by the governor." ECF No. 3 at 9; *see also* ECF No. 1-4 at 10, ¶ 5.15. Indeed, the emergency rule only references the Proclamation as an explanation for why the emergency rule was promulgated pursuant to other authority. ECF No. 1-4 at 26-27. Plaintiff fails to raise a serious question going to the merits of this claim.

*3. Substantive Due Process*

Finally, Plaintiff contends the Proclamations and emergency rule infringe on Plaintiff's substantive due process right to pursue and common calling and to use and dispose of private property. ECF No. 3 at 8. "The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that … interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) (quotation and citation omitted); *see also Yim v. City of Seattle*, 194 Wash. 2d 682, 686 (2019) (unless Washington courts adopt "heightened protections as a matter of independent state law, state substantive due process claims are subject to the same standards as federal substantive due process claims."). Defendants oppose Plaintiff's motion on the grounds that Plaintiff does not identify a fundamental right that is protected by the Due Process Clause. ECF No. 5 at 5-7. Even if Plaintiff does identify a protected right, Plaintiff's claim fails to raise a serious question going to the merits of its claim.

It is well settled that state governments have the authority to enact "quarantine laws and 'health laws of every description'" pursuant to their police powers. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 24-25 (1905). "[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Id.* at 26. So long as a public health law is reasonable and not overly broad or unequally applied, it is permissible even where it infringes on other protected interests. *Id.* at 28. Here, it could not be disputed that the Proclamations and emergency rule are reasonably related to the ongoing COVID-19 pandemic. Plaintiff does not argue that the Proclamations and emergency rules are overly broad or unequally applied; instead, Plaintiff's challenge is to the mere existence of the rules. ECF No. 3 at 8; *see* ECF No. 1-4 at 12-13, ¶¶ 5.38-5.42. This Court joins the growing consensus of district courts that constitutional challenges to similar COVID-19 related measures are precluded by *Jacobson*. *See Open Our Oregon v. Brown*, No. 6:20-cv-773-MC, 2020 WL 2542861, at *2 (D. Or. May 19, 2020) (gathering cases). Plaintiff fails to raise a serious question going to the merits of this claim.

Because Plaintiff fails to raise a serious question going to the merits of any of its claims, the Court finds it unnecessary to address Defendants' standing argument. ECF No. 5 at 4.

**C. Irreparable Injury**

Plaintiff contends its lost income and threatened closure constitute an irreparable injury. ECF No. 3 at 9-10. A plaintiff seeking injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

Defendants respond that monetary injury alone is insufficient to stablish irreparable harm. ECF No. 5 at 10. "Nonetheless, '[t]he threat of being driven out of business is sufficient to establish irreparable harm.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985)). Plaintiff has offered declarations in support of its alleged business losses and risk of closure. *See* ECF No. 1-4 at 15-18. This is sufficient to indicate that Plaintiff is likely to suffer an irreparable injury absent injunctive relief.

**D. Balancing of Equities and Public Interest**

Plaintiff contends that the balance of equities tip sharply in its favor and that a TRO would advance the public interest. ECF No. 3 at 6-7, 10-11. "When the government is a party, these last two factors merge." *Drakes Bay v. Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). The Court must balance the hardships to the parties should the *status quo* be preserved against the hardships to the parties should Plaintiff's requested relief be granted. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quotation omitted). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted). Regardless, the Court will not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh other public interests that cut in favor of *not* issuing the injunction." *Cottrell*, 632 F.3d at 1138 (emphasis in original).

Plaintiff contends that the equities tip sharply in its favor because Plaintiff has a "Clean & Safe" plan which Plaintiff asserts would allow it to operate its

business at a low risk to public health, because LNI would otherwise remain able to enforce its other workplace safety rules, and because it is inequitable to allow some business to operate while Plaintiff is prohibited from operating and unable to recoup its economic losses. ECF No. 3 at 6-7. Plaintiff reiterates some of these arguments in favor of its public interest argument. *Id.* at 10-11. Defendants respond that the significant public health risks outweigh other considerations here. ECF No. 5 at 10-11.

Defendants' argument is more persuasive. Defendants have put forth substantial evidence of the public health risks posed by COVID-19, especially concerning its serious symptoms and risk of death, its ability to be spread by individuals who do not know they are infected, the limited knowledge medical professionals have of this novel disease, and the need to restrict in-person gatherings to slow transmission of the disease in the absence of other effective prevention or treatment measures. ECF No. 6-1 at 21-25; ECF No. 7 at 3-8, ¶¶ 6-15. Defendants have also proffered opinions from public health professionals who believe that the risks posed by COVID-19 would not be adequately managed if only addressed by local officials. ECF No. 6-1 at 26-27; ECF No. 7 at 13-14, ¶ 23.

The Court sympathizes with Plaintiff that the economic impact of the COVID-19 pandemic has been extremely challenging, particularly for small and family-owned businesses. However, the public interest in mitigating and

combatting the significant danger posed by the spread of COVID-19 outweighs individual business interests in continued operations. It is not the Court's role to second-guess the reasoned public health decisions of other branches of government. *Jacobson*, 197 U.S. at 28. Plaintiff's requested TRO would not be in the public interest.

## CONCLUSION

The Court finds that Plaintiff has failed to satisfy either the *Winter* test or the *Cottrell* sliding scale test. Therefore, Plaintiff is not entitled to its requested relief.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Temporary Restraining Order (ECF No. 3) is DENIED.
2. The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** June 12, 2020.




THOMAS O. RICE
Chief United States District Judge